UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| DEANNA KOHLEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:23-cv-05046-MDH |
| ) | |
| PRODUCERS COOPERATIVE ) | |
| ASSOCIATION OF GIRARD, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Defendant's Motion for Partial Summary Judgment. (Doc. 40). Defendant moves for summary judgment on the issue of recoverable damages. Defendant argues Plaintiffs' action is a property damage dispute. Plaintiffs' claims arise following damage or death to thirty donkeys and horses after the donkeys and horses ingested feed sold by Defendant. More specifically, Plaintiffs allege the feed, which was determined to contain trace levels of monensin, caused harm to Plaintiffs' thirty equines.

Plaintiffs seek damages for loss of appraised value; loss of production; out of pocket expenses for veterinary care and other expenses due to poisoned animals; cots of recommended medical equipment for care of surviving animals; feed costs for surviving animals; staffing costs to care for surviving animals; and laminitis care (farrier and veterinary care for the affected animals). Defendant seeks a judicial determination that the recoverable damages in this matter are limited to a property damage claim.

**STANDARD**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and

1

. . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Aviation Charter, Inc. v. Aviation Research Group*, 416 F.3d 868, 868 (8th Cir. 2005). When considering Defendant's Motion for Summary Judgment, the Court must view the evidence and the inferences that may reasonably be drawn from the evidence in the light most favorable to the non-moving party, Plaintiffs. *Id*.

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc*., 838 F.2d 268, 273 (8th Cir. 1988). If no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc*., 853 F.2d 616, 618 (8th Cir. 1988)

## DISCUSSION

Defendant argues that MAI 4.02 is the proper jury instruction for Plaintiffs' damages. MAI 4.02 is a proper instruction "in cases involving property damage only." *St. John's Bank & Tr. Co. v. Intag, Inc*., 938 S.W.2d 627, 629 (Mo. Ct. App. 1997). Under MAI 4.02, the measure of damages is "'the difference between fair market value before and after the occurrence plus compensation for loss of use.'" *Id*. Defendant seeks a judicial determination that the recoverable damages in this matter are limited to "the difference between the fair market value of the equine property before they were damaged and their fair market value after they were damaged, plus such sum …for the loss of use thereof." Citing, MAI 4.02; and *Barber v. M. F. A. Milling Co*., 536 S.W.2d 208, 210 (Mo. App. 1976) (damage instruction charged the jury to measure damages by the difference

2

between the fair market value of the cattle before they were damaged and the fair market value after they were damaged); *Freeman v. Lawson*, 797 S.W.2d 882, 884 (Mo. Ct. App. 1990) (holding Plaintiff was only entitled to the difference in fair market value of his two bulls from before and after his neighbor shot Plaintiff's two bulls).

Plaintiff contends that it is seeking damages beyond before-and-after property damage, such as consequential damages, and therefore MAI 4.02 is inapplicable because it does not correctly state the rule for the recovery of consequential damages. Citing *St. John's Bank & Tr. Co. v. Intag, Inc.*, 938 S.W.2d 627, 629 (Mo. Ct. App. 1997). MAI 4.02 is not applicable where the damages sought include items not measurable by before and after value or by cost of repair. *Stegan v. H. W. Freeman Const. Co.*, 637 S.W.2d 794, 798 (Mo. Ct. App. 1982).

Here, Plaintiffs argue many equines died, sometimes days or weeks after the poisoning, and some continue to live in a debilitated state. Plaintiffs contend they have suffered property damage but have also incurred significant consequential damages in the form of costs for veterinary care, other expenses related to attempting to provide care to animals, loss of production, and costs for ongoing care and treatment of injured but living animals. However, Plaintiffs' allegations are distinguishable from the cases cited. In *Stegan v. H. W. Freeman Const. Co* purchasers filed an action against a construction company for breach of implied warranty of fitness for use. 637 S.W.2d 794. And in *St. John's Bank & Tr. Co. v. Intag, Inc.*, a bank brought a breach of warranty claim against a company that improperly installed a supply system for the bank's computers. 938 S.W.2d 627.

The issue before this Court is what damages Plaintiffs may seek for their claims involving death and injury to their horses and donkeys. Defendant cites two cases in support of its argument.

3

First, in *Barber v. M. F. A. Milling Co.*, 536 S.W.2d 208, 210 (Mo. App. 1976), owners of cattle alleged their cattle were damaged by defective cattle feed. The jury was instructed to measure plaintiffs' damages, if awarded, by the difference between the fair market value of the cattle before they were damaged and the fair market value after they were damaged. The Court stated, "there is no doubt that since plaintiffs sought only property damages, MAI 4.02 was the proper measure of damage instruction to be given." *Id.*

Further, in *Freeman v. Lawson*, 797 S.W.2d 882, 884 (Mo. Ct. App. 1990), an owner of two bulls brought a claim for damages after his bulls were shot. The bulls were no longer able to perform as breeding bulls and were sold at public stockyards. The court stated the applicable measure of damages is the difference in the fair market value of the bulls before and after they were shot. *Id*.

Plaintiffs seek damages for property loss (e.g. appraised value) and also for loss of production, out-of-pocket expenses for veterinary care and other expenses due to poisoned animals, cost of recommended medical equipment for care of surviving animals, feed costs for surviving animals, staffing costs to care for surviving animals, and laminitis care (farrier and veterinary care). Plaintiff argues these are damages permitted by Missouri law. Citing *Mo. Farmers Asso. v. Kempker*, 726 S.W.2d 723, 725 (Mo. 1987) (recovery permitted for loss of milk and calf production, and for loss of subsequent production); *Cunningham v. Dickerson*, 104 Mo. App. 410, 79 S.W. 492 (1904) (holding for an injured animal the allowable damages are the reasonable market value of the animal immediately before the injury and immediately thereafter, together with the reasonable expenses incurred); *Smith v. Chicago & A. Ry. Co.*, 127 Mo. App. 160, 105 S.W. 10, 13 (1907) (holding for injured horses: "'When property is not entirely lost or

4

destroyed, but only impaired in value, the measure of damages is the difference between the value before the injury and immediately thereafter, and the reasonable expense incurred or value of time spent in reasonable endeavor to preserve or restore the property injured.").

In *Missouri Farmer's Ass'n*, plaintiff claimed damages based on defective feed given to dairy cows. MFA argued that the measure of damages for injury to a milk cow is the difference in the value immediately before and immediately after the injury. *Missouri Farmers Ass'n v. Kempker*, 726 S.W.2d at 725 (citing several cases.). The court stated that any such rule "would be appropriate for injury to a mule or a dog," but found when cows in a milk producing herd are injured in a way that affects production of calves and milk there may be recovery for loss of milk and calf production until a cow is sold or disposed of. *Id.* The court further stated there could be damages for loss of subsequent production until a satisfactory replacement cow could be obtained. *Id.* (further stating that the owner need not liquidate a cow simply because milk production is declining or has stopped and may wait to see whether there will be improvement). Further any questions regarding whether a plaintiff took reasonable steps to mitigate damages are for the jury. *Id.*

Plaintiffs state in their opposition that they are entitled to lost profits in addition to replacement costs due to the loss of use of the equine that were used for breeding purposes. Citing, *Hanes v. Twin Gable Farm, Inc.*, 714 S.W.2d 667, 669-70 (Mo. Ct. App. 1986) (lost profits from the failure of a bull purchased for breeding purposes to impregnate plaintiff's cows was recoverable as damages for the lost "crop of calves"). In *Hanes,* the plaintiff was fraudulently sold a bull that was sterile despite being told it was a good breeder. *Id.* Plaintiff moved for damages that included feed for the year he kept the bull after discovering it was sterile, the Court denied

5

this claim. The court allowed plaintiff damages of the difference between the value as represented and the actual value at the time of purchase if the bull was sterile. The court also allowed damages for the lost calf crop, or lost profits. *Id.*

Here, one of the Plaintiffs is a non-profit so an award for lost profits is not entirely clear. Plaintiffs argue they are seeking "consequential damages" in the form of costs for veterinary care and other expenses related to attempting to provide care to animals, loss of production and costs for ongoing care and treatment of injured but living animals. Plaintiffs contend Missouri courts have affirmed that loss of production and expenses related to care of living, yet injured, animals or to "repair" those animals, are allowable damages. Plaintiffs state Missouri courts have affirmed that loss of production and expenses related to care of living, yet injured, animals or to "repair" those animals, are allowable damages. However, none of the cases cited by Plaintiffs are exactly on point.

In reply, Defendant states it filed its Motion for Partial Summary Judgment on this issue because Plaintiffs designated experts have opined on damages Defendant does not believe are recoverable and/or are duplicative of damages permissible under MAI 4.02 and existing precedent.

After reviewing the arguments set forth by the parties, Plaintiffs' claimed damages are damages to the equines. At this time, the damages sought by Plaintiffs appear to be damages claimed to repair (or care for) the property, damages claimed as to value of said property, and damages claimed for loss of use of the property. Based on the record currently before it, and the case law presented, the Court finds the measure of damages to be the difference in the fair market value of the animals before the ingested feed incident and the fair market value of the animals after. The Court finds reasonable veterinary expenses and costs of care incurred between the time

6

Case 3:23-cv-05046-MDH    Document 52    Filed 11/12/24    Page 6 of 7

the animals ingested the feed and the necessary time to determine the cause of the equines' injury would be appropriate. The Court further finds costs associated with putting animals down or euthanasia may be appropriate. However, the Court does not find that costs of recommended medical equipment for continuing care of surviving animals; feed costs for surviving animals; staffing costs to care for surviving animals; and laminitis care (farrier and veterinary care for the affected animals) are an appropriate measure of damages in this case.

## DECISION

Wherefore, the Court hereby **GRANTS in part and DENIES in part** the motion for summary judgment for the reasons stated herein. The Court's ruling on this issue is preliminary to the extent it is subject to change based on pre-trial and trial rulings and the evidence submitted.

**IT IS SO ORDERED.**

Dated: November 12, 2024

                                                 */s/ Douglas Harpool*
                                                 **DOUGLAS HARPOOL**
                                                 **UNITED STATES DISTRICT JUDGE**